Thomas PRISCO and Filomena Prisco, Plaintiffs,

v.

The STATE OF NEW YORK; New York State Department of Environmental Conservation; Thomas C. Jorling, as Commissioner of The New York State Department of Environmental Conservation; State of New York Organized Crime Task Force; John M. Murray and William E. Bubenicek, as employees of Division of Law Enforcement, Bureau of Environmental Conservation Investigation, New York State Department of Environmental Conservation; New York State Police; Thomas A. Constantine, as Superintendent of New York State Police; Lloyd F. Ward, as an employee of the New York State Police; James LaBate; Angelo Anthony Calvello; A–1 Carting, Inc.; A–1 Compaction Corp.; A–1 Compaction, Inc.; Greene Refuse Service; A & D Carting Corp.; A.F.C. Transfer Corp.; American Disposal Services, Inc.; Black Meadow Construction, Inc.; John Danna & Sons, Inc.; Gun Hill Trucking, Ltd.; Suburban Carting Corp.; Nyconn Waste Disposal; Tri-County Disposal, Inc.; Stamford Wrecking Company; Finne Bros. Refuse Systems, Inc.; Tiger Recycling, Inc.; Anthony Moreno; Moreno Bulk Haulage; SC–ND Construction Co., Inc.; LSC Trucking Corp.; DeCostole Carting, Inc.; Kristal Papers, Ltd.; Karnak Inc.; Best Container Service, Inc.; Montauk Enterprises; G & A Sand and Gravel, Inc.; Mill Basin Construction Corp.; Garan Carting Co., Inc.; Stevens Trucking, Inc.; Top Job Sanitation Co., Inc.; Cross Bay Contracting Corp. and Consumer Transfer Trucking, Defendants.

No. 91 Civ. 3990 (RLC).

United States District Court, S.D. New York.

Sept. 14, 1995.

---

Reardon & Sclafani, P.C., Yonkers, NY (Michael V. Sclafani, of counsel), for plaintiffs, Thomas Prisco and Filomena Prisco.

Sheft & Sheft, New York City (Gerald A. Greenberger, of counsel), for defendant John Danna & Sons, Inc.

Keane & Beane, P.C. White Plains, NY (Joel H. Sachs, of counsel), for defendant Stamford Wrecking Co.

Harris Beach & Wilcox, Albany, NY (David A. Engel, of counsel), for Defendants Top Job Sanitation Co., Inc., Gun Hill Trucking, Ltd., A–1 Carting, Inc., A–1 Compaction Corp., A–1 Compaction, Inc., Greene Refuse Service, Suburban Carting Corp., NYCONN Waste Recycling, Inc. s/h/a NYCONN Waste Disposal, American Disposal Services, Inc. and Vincent Cavaliere.

ROBERT L. CARTER, District Judge.

*Preliminary Statement*

Plaintiffs Filomena Prisco and Thomas Prisco, who has since passed away, instituted this action for declaratory and injunctive relief, and monetary damages for certain alleged violations of federal and state environmental statutes and state common law by a

number of private defendants in relation to a landfill plaintiffs owned in the town of Patterson, Putnam County, New York.[1] Extensive discovery has been conducted by the parties. For further procedural history see *Prisco v. State of N.Y.*, No. 91 Civ. 3990, 1994 WL 114818 (S.D.N.Y. Mar. 25, 1994) (Buchwald, J.); *Prisco v. State of N.Y.*, 804 F.Supp. 518 (S.D.N.Y.1992) (Carter, J.); *Prisco v. State of N.Y.*, No. 91 Civ. 3990, 1992 WL 88165 (S.D.N.Y. Apr. 22, 1992) (Carter, J.).

Defendant Stamford Wrecking Company ("Stamford") moves for summary judgment pursuant to Rule 56, F.R.Civ.P., contending that there are no evidentiary facts to support plaintiffs' claims that Stamford violated the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* (1995) ("CERCLA"), the Resource Conservation and Recovery Act, 42 U.S.C. § 6972 *et seq.* (1995) ("RCRA"), the Clean Water Act, 33 U.S.C. § 1311(a) (1986) ("CWA"), and New York State Environmental Conservation Law § 24–0107 (McKinney 1984). Stamford also moves to dismiss plaintiffs' pendant state claims for lack of federal subject matter jurisdiction. Defendants Top Job Sanitation Co., Inc., Gun Hill Trucking, Ltd., A–1 Carting, Inc., A–1 Compaction Corp., A–1 Compaction, Inc., Greene Refuse Service, Suburban Carting Corp., NYCONN Waste Recycling, Inc. s/h/a NYCONN Waste Disposal, American Disposal Services, Inc. and Vincent Cavaliere move for summary judgment, pursuant to Rule 56, F.R.Civ.P., and/or to dismiss, pursuant to Rule 12(b)(6), plaintiffs' first, second, third and fourth causes of action, (*see* Complaint, ¶¶ 79–113), involving CERCLA, RCRA and CWA claims against them; and to dismiss plaintiffs' pendent state law claims set forth in plaintiffs' fifth through twelfth causes of action for lack of federal subject matter jurisdiction. (*See* Complaint, ¶¶ 114–161). Defendant John Danna & Sons Inc. ("Danna") moves for summary judgment, pursuant to Rule 56, F.R.Civ.P., pertaining to all of the claims brought against it by plaintiffs.

Plaintiffs cross-move against all the individual defendants. In particular, the Priscos cross-move for summary judgment, pursuant to Rule 56, F.R.Civ.P., on the CERCLA, RCRA, and CWA claims set forth in the first, second, third and fourth causes of action; to declare the defendants jointly and severally liable for all future response costs under CERCLA, pursuant to 28 U.S.C. § 2201 (1994); and to strike under 42 U.S.C. § 9607(b) (1995) any impermissible affirmative defenses made by defendants.

*Factual Background*

The Priscos own approximately twenty acres of land in the town of Patterson in Putnam County, New York, where they ran a flea market and leased property. In anticipation of commercial development in their area, the Priscos wanted to enhance the value of their property by leveling it with construction and demolition ("C & D") material, a less expensive alternative to virgin soil. Consequently, from approximately May, 1987 to early fall, 1987, the Priscos paid Stamford Wrecking Co. to deposit such material on their land.

Plaintiffs claim that in about August of 1987, they were approached by defendants William E. Bubenicek, who represented himself as a New York State Department of Environmental Conservation ("NYSDEC") law enforcement officer, and Lloyd F. Ward, a New York State Police Officer. Bubenicek and Ward sought to establish a C & D landfill on the Priscos' property, to be run by the NYSDEC. Plaintiffs concede that they agreed to allow the landfill on their property, believing that Bubenicek and Ward operated the landfill on behalf of and with the authorization of the NYSDEC. Accordingly, from August, 1987 until about February, 1988, NYSDEC allegedly operated a landfill facility at the Prisco site. Bubenicek and Ward solicited the private corporate defendants to transport C & D material to the property. The named defendants transported solid waste to the Prisco site.

On or about April 28, 1988, the Priscos returned to their home and discovered C &

---

1. The plaintiffs also seek relief from the state and various state representatives, but this opinion will only address motions involving the private defendants.

D material piled and deposited in their pond. The Priscos allegedly attempted to contact Bubenicek and Ward, to no avail. The Priscos allege that pursuant to directives by NYSDEC's Regional Director Paul D. Keller and Assistant Sanitary Engineer Lawrence C. Gallagher, they had the C & D material leveled, the site capped with clean dirt and the premises seeded. In addition, plaintiffs claim they dredged and removed C & D debris from the pond and excavated the site to make trenches to control the leachate problem. The Priscos claim that they spent approximately $10,000 to $11,000 in costs.

Plaintiffs contend that their property has been contaminated by hazardous substances and wastes deposited by the individual wastehauler defendants in this action. The NYSDEC conducted inspections of the Prisco site in 1987 and 1988 and determined that the Prisco landfill had to be closed in accordance with its Part 360 regulations, which regulate solid waste management facilities. *See* 6 NYCRR Part 360 (1987). In 1991, Environmental–Science, Inc., on behalf of and approved by the NYSDEC, conducted a Preliminary Site Assessment ("PSA") which documented the nature of the material at the Prisco site and its impact on the environment. The NYSDEC continues to make such assessments. Plaintiffs later discovered that the NYSDEC was allegedly involved in a "sting" operation on their property in an attempt to gain information about the waste hauling industry in the area.

### Legal Standards

#### A. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994). The moving party bears the initial burden of demonstrating an absence of any genuine issue of material fact, and then the burden

shifts to the non-moving party to point to specific facts that demonstrate that there is a genuine issue for trial. Rule 56(e), F.R.Civ. P.; *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When determining whether to grant a motion for summary judgment, the court must ascertain whether there is sufficient evidence to allow a jury to reasonably find in favor of the non-moving party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

#### B. Motion to Dismiss

In general, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Salahuddin v. Cuomo,* 861 F.2d 40, 43 (2d Cir.1988); *Hudson's Bay Fur Sales Canada, Inc.,* No. 90 Civ. 8026, 1991 WL 60377, at *2 (S.D.N.Y. Apr. 8, 1991) (Carter, J.), and "the court must consider the legal sufficiency of the complaint, not the weight of evidence which might be offered at trial." *Granat v. Center Art Galleries–Hawaii, Inc.,* No. 91 Civ. 7252, 1993 WL 403977, at *2 (S.D.N.Y. Oct. 6, 1993) (Carter, J.). The court is required to assume the veracity of the plaintiff's allegations and to draw inferences in favor of the pleader. *Id.; Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989).

#### I. CERCLA

The plaintiffs seek recovery pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) (1995). A *prima facie* cause of action under CERCLA is established when the following requirements are met:

(1) defendant fits one of the four classes of responsible parties outlined in § 9607(a); (2) the site is a facility [under § 9601(9) ]; (3) there is a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or threatened release; and (5) the costs and response actions conform to the National Contingency Plan set up un-

der the Act and administered by the EPA [Environmental Protection Agency].... *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198 (2d Cir.1992); *accord United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 720 (2d Cir.1993). There is strict liability, *General Elec. Co. v. AAMCO Transmissions, Inc.,* 962 F.2d 281, 285 (2d Cir.1992); *Murtha,* 958 F.2d at 1198, and CERCLA should be construed liberally, as Congress intended. *General Elec. Co.,* 962 F.2d at 285; *Murtha,* 958 F.2d at 1198. The court will examine plaintiffs' motion for summary judgment on their CERCLA claims first and then defendants' in turn. If plaintiffs are able to establish each of these elements and defendants are unable to establish the applicability of one of the defenses pursuant to 42 U.S.C. § 9607(b) (1995), then the plaintiffs are entitled to summary judgment on the liability issue. *Chesapeake and Potomac Tel. Co. of Va. v. Peck Iron & Metal Co.,* 814 F.Supp. 1269, 1274 (E.D.Va.1992). If defendants are able to establish that they are not responsible parties, as defined by 42 U.S.C. § 9607(a) (1995), then they are entitled to summary judgment on the liability issue. For organizational ease, the court will initially evaluate elements two through five because these elements are common to all the defendants.

## A. *Facility* (second element)

There is no dispute over plaintiffs' characterization of the site as a facility under 42 U.S.C. § 9601(9) (1995). Section 9601(9) states that the term "facility" means "(A) any ... landfill ... or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located...." The Priscos' site contains a landfill and the Priscos' site is where hazardous substances were deposited, and therefore CERCLA's facility criteria, or CERCLA's second element, has been met.

## B. *Release of Hazardous Substances* (third element)

In order to trigger CERCLA liability, the existence of a hazardous substance, as defined by CERCLA, must be demonstrated. *Southern Pac. Transp. Co. v. California (Caltrans),* 790 F.Supp. 983, 984 (C.D.Cal.1991). Relying on *Warwick Administrative Group v. Avon Products, Inc.,* 820 F.Supp. 116, 119 (S.D.N.Y.1993) (Goettel, J.) and *Barnes Landfill, Inc. v. Town of Highland,* 802 F.Supp. 1087 (S.D.N.Y.1992) (Broderick, J.), defendants argue that after extensive discovery, plaintiffs have failed to produce sufficient evidence which could convince a reasonable jury that their C & D material contained hazardous substances. However, defendants' reliance on *Warwick* and *Barnes* is misplaced. In *Warwick,* this court dismissed plaintiffs' CERCLA private cost recovery action because the plaintiffs failed to allege that the solid wastes that defendants transported and disposed of contained hazardous substances. *Id.* at 122. In particular, the plaintiffs claimed that defendants fit the definition of a responsible party pursuant to 42 U.S.C. § 9607(a)(3) (1995) and that studies showed hazardous substances at the facility, making each of the defendants liable for all response costs. *Id.* at 121. Plaintiffs were allowed to replead in order to clarify that the defendants' solid waste contained the hazardous substances mentioned by the studies. *Id.* at 122. Here, the Priscos allege that the defendants all deposited solid waste on plaintiffs' property and that hazardous substances were found on plaintiffs' property which are constituents of each of the defendants' solid wastes delivered to the site. (Pls.' Mem. of Law in in [sic] Support of Notice of Cross–Mot. and Trial Mem. ("Pls.' Mem.") at 39.) Thus, the Priscos have sufficiently alleged that defendants' solid waste contained hazardous substances.

In *Barnes,* the operator of a landfill brought a private CERCLA action seeking reimbursement for response costs and a declaratory judgment against thirty-three defendants, most of whom contributed waste to the landfill. The defendants moved to dismiss the claim for failure to allege that there had been a release or threatened release of hazardous substances at the facility. *Id.* at 1088. This court concluded that the plaintiff did not specify what hazardous substances were released and that plaintiff's

> blanket allegations against all defendants do not provide any defendant with adequate notice of that defendant's potential liability. Thus, there should be some indi-

cation that a particular defendant contributed hazardous waste, not merely waste, to the landfill.... [I]t would be inappropriate for an entity known to contribute only paper or kitchen garbage to be made a defendant merely because heavy metal was in the material found in a dump site.

*Id.* at 1088 n. 2. The court granted the defendants' motion to dismiss for vagueness and granted the plaintiff leave to replead. *Id.* at 1089. The court ultimately concluded that the second amended complaint sufficiently alleged a CERCLA violation, noting that the plaintiff claimed that particular hazardous substances were present in waste it received from a single defendant. *Barnes Landfill, Inc. v. Town of Highland,* No. 91 Civ. 5410, 1993 WL 525113, at *2–3 (S.D.N.Y. 1993) (Broderick, J.).

*Barnes* is distinguishable from this case, in that the Priscos specifically identify what hazardous substances were released, (*see* Pls.' App. of Exs. to Mem. of Law in Supp. of Notice of Cross–Mot. dated Apr. 4, 1994 and Trial Mem. ("Pls.' App."), Ex. 39, List of Hazardous Substances and Reportable Quantities ("Pls.' List"); Rich. Aff. at ¶ 14), and allege that the defendants are liable for the hazardous substances which are characteristic of and by-products of the solid waste they deposited. Defendants assert that they deposited C & D material, and the PSA, which found the presence of hazardous substances, concluded that "the site can be characterized as having a mixture of C & D debris, solid waste, and non-hazardous industrial waste." (Sachs Aff., Ex. P, Preliminary Site Assessment at I–7.) Unlike *Barnes,* this is not a case where it is *known* that defendants contributed only nonhazardous C & D to the landfill and are being made defendants merely because hazardous substances were found there. Thus, *Barnes* is inapposite, and plaintiffs have adequately alleged defendants' potential culpability.

██ Defendants contend that the PSA established that there were no hazardous wastes at the Prisco site and that therefore plaintiffs have failed to demonstrate that there was a release or threatened release of hazardous substances. In particular, the PSA concluded,

No hazardous wastes were documented at the site according to 40 CFR 261, Subsection C and 6 NYCRR Part 371.... The presence of hazardous waste at the site was not documented through records searches, field observations, or sample analytical results.

(Sachs Aff., Ex. P, PSA at I–7; *see also* Ex. Q, Mem. from O'Toole to Sullivan of 11/5/91, at 1) ("no 6 NYCRR Part 371 hazardous wastes were documented to be present at the site.")). Defendants assert that the PSA is a comprehensive site investigation, involving significant testing of the soil and water for hazardous substances on the Prisco site. Furthermore, defendants assert that the Prisco site has not been classified as a Superfund site or one containing hazardous wastes by either the state of New York or the United States government and that the Priscos have not been served by any governmental agency for violations of CERCLA, RCRA, CWA or any other federal or state wetlands statutes.

Defendants argue that plaintiffs' purported expert, Charles A. Rich, a certified professional geologist and president and principal hydrogeologist of CA Rich Consultants, Inc., also failed to provide credible evidence demonstrating that there were hazardous wastes on the Prisco property. In particular, Rich neither sampled nor tested the site, and Rich neither observed nor smelled evidence of hazardous wastes during his one-hour visit. (Sachs Aff., Ex. R, Rich Dep. at 29–30, 32.) Based on his review of materials and his own visit, Rich concluded that "there has been a continuing 'release' ... of leachate containing both defined and listed 'hazardous wastes' and 'hazardous substances' into the adjoining wetlands, surface water and groundwater ... [that] may cause an imminent and substantial threat to the local water supply ... and may ultimately cause harm to the New York City water supply system." (Rich Aff. at ¶ 7.) Rich criticizes the PSA for, among other things, not being thorough enough in its sampling to conclude that the site does not contain reportable quantities of hazardous waste pursuant to New York regulations. (Rich Aff. at ¶ 8.) Defendants argue that Rich's criticisms of the PSA are

speculative and that his opinion should not be considered that of an expert.

Even if the court assumes that the PSA is complete and correct in its conclusion that no hazardous waste was found at the Prisco site, that Rich's assessment of the site is uninformative and misguided, and that federal and state government never classified the site as a Superfund or brought official action against the Priscos, it does not follow that plaintiffs cannot bring a CERCLA action. Such factors are immaterial for triggering CERCLA liability. *See State of N.Y. v. Shore Realty Corp.*, 759 F.2d 1032, 1037 (2d Cir.1985) (EPA's failure to list site on the National Priorities List ("NPL"), 42 U.S.C. § 9605(a)(8)(B) (1995), is irrelevant to defendant's liability); *Mid Valley Bank v. North Valley Bank*, 764 F.Supp. 1377, 1386 (E.D.Cal.1991) (under CERCLA, hazardous substances are defined by federal and not state standards). CERCLA liability is triggered when there is a release or threatened release of hazardous substances as defined by 42 U.S.C. § 9601(14) (1995). In particular, a "hazardous substance" includes,

> "(A) *any* substance" designated under the Clean Water Act, "(B) *any* element, compound, mixture, solution, or substance" under CERCLA § 9602, "(C) *any* hazardous waste" listed in § 3001 of the Solid Waste Disposal Act, "(D) *any* toxic pollutant" listed in § 307(A) of the Clean Water Act, "(E) *any* hazardous air pollutant listed under" § 112 of the Clean Air Act, and "(F) *any* imminently hazardous chemical substance or mixture" with respect to which the EPA has taken action.

*Alcan*, 990 F.2d at 720 (quoting 42 U.S.C. § 9601(14) (1995) (emphasis added). Indeed, "[t]he breadth of § 9601(14) cannot be easily

escaped." *Alcan*, 990 F.2d at 720. In accordance with 42 U.S.C. § 9602(a) (1995), the EPA has designated certain substances as hazardous in 40 C.F.R. § 302.4 (1994) and the accompanying table. In particular, according to the PSA, the following substances listed in 40 C.F.R. § 302.4 (1994) were present at the Prisco site: acetone, chloroform, 2–butanone (MEK or methyl ethyl ketone), benzene, ethylbenzene, xylenes (BTEX), hydrogen sulfide, carbon disulfide, methane, trichloromonofluoromethane, 1,1—dichloroethane (1,1—DCA), toluene, polychlorinated biphenyls (PCBs), polynuclear aromatic hydrocarbons (PAHs), vinyl chloride, trichloroethene (TCE),[2] tetrachloroethene (PCE), butyl benzl phthalate, cadmium, lead, silver, 4,4' DDT, 4,4' DDE, chrysene, nickel and benzo[a]pyrene, dicholrodifluoromethane,[3] and bis (2–ethylhexyl)phthalate.[4] *See* 40 C.F.R. § 302.4 (1994) and accompanying table; Pls.' List; Pls.' App., Ex. 30, PSA at I–2—I–8.[5]

■ The Second Circuit has "expressly held that '[q]uantity or concentration is not a factor'" and that the "'hazardous substance' definition ... include[s] even minimal amounts of pollution." *Alcan*, 990 F.2d at 720 (quoting *Murtha*, 958 F.2d at 1200); *accord City of N.Y. v. Exxon Corp.*, 744 F.Supp. 474, 483–84 (S.D.N.Y.1990) (Conboy, J.), *aff'd upon reconsideration*, 766 F.Supp. 177 (S.D.N.Y.1991) (Conboy, J.). Thus, the mere presence at the Prisco site of the hazardous substances enumerated in 40 C.F.R. 302.4 (1994) triggers CERCLA liability, *Exxon*, 744 F.Supp. at 483; *Murtha*, 958 F.2d at 1200 ("a substance need only be designated as hazardous under any *one* of the four environmental statutes or under Table 302.4 to

---

**2.** Plaintiffs list trichloroeth*l*ene, (Pls.' List) (emphasis added), which seems to be a spelling error. Trichloroethene is listed in § 302.4 and it is the same as trichloroethylene or TCE.

**3.** Plaintiffs do not mention this substance, but the court notes that this § 302.4 compound is listed in the PSA as present at the Prisco site. (Pls.' App., Ex. 30, PSA at I–3.)

**4.** Plaintiffs do not mention this substance, but the court notes that this § 302.4 compound is listed in the PSA as present at the Prisco site. (Pls.' App., Ex. 30, PSA at I–3.)

**5.** Plaintiffs also list creosote, DDD and chromium as § 302.4 hazardous substances found at the Prisco property by the PSA. However, the PSA does not state that creosote was found at the Prisco site. Instead, it states that the PAHs found at the site "are commonly associated with ... wood preservatives such as creosote." (Pls.' App., Ex. 30, PSA at I–2, I–5.) Furthermore, from what the court can discern neither DDD and chromium is mentioned by the PSA. However, Rich claims that chromium was present at the Prisco site. (*see* Rich. Aff. at ¶ 14.)

be a hazardous substance under CERCLA"); *City of N.Y. v. Exxon Corp.*, 766 F.Supp. 177, 185 (S.D.N.Y.1991) (Conboy, J.); *see, e.g., Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1152 (1st Cir. 1989); *United States v. A & N Cleaners & Launderers, Inc.*, 788 F.Supp. 1317, 1324–25 (S.D.N.Y.1992) (Sweet, J.), and it is irrelevant if the PSA asserts that there are even very low levels of concentration, *Murtha*, 958 F.2d at 1200; *see* Sachs Aff., Ex. P, PSA at I–7, or that such substances do not rise to the level of being classified as hazardous "waste." [6]

There is no dispute over whether there was a release or a threat of release of hazardous substances. 42 U.S.C. § 9601(22) (1995) states that a "release" is "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." *See Shore Realty Corp.*, 759 F.2d at 1045 (holding that "leaking tanks and pipelines, the continuing leaching and seepage from the earlier spills, and the leaking drums all constitute 'releases' "). The PSA concluded that "[c]ontamination has been released from the site to the groundwater, surface water, and sediment" and that "[t]hreats to the public health and the environment are present to the degree described" within the PSA. (Sachs Aff., Ex. P, PSA at I–8.) Thus, the court concludes that there was a release or threat of release of hazardous substances at the Prisco site. Therefore, the third element of CERCLA has been met.

## C. *Response Costs* (fourth element)

■ Defendants contend that the Priscos did not incur costs in response to the release or threatened release of hazardous substances. In particular, defendants argue that the Priscos' costs were for closing the landfill, pursuant to the requirements of 6 NYCRR, Part 360, and not for responding to a release or threat of release of hazardous substances.

■ 42 U.S.C. 9601(25) (1995) defines a "response" as a "removal" or "remedial action." A "removal" is "the taking of such ... actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release" of hazardous substances, 42 U.S.C. § 9601(23) (1995), and "remedial action" is action "consistent with [a] permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance in the environment, to prevent or minimize the release of hazardous substances...." 42 U.S.C. § 9601(24) (1995). A "remedial action" includes "dredging or excavations" and "collection of leachate." 42 U.S.C. § 9601(24) (1995). In general, a removal is a short-term cleanup arrangement carried out in response to an emergency situation, while a remedial action involves a longer-term, more permanent containment or disposal program, *Shore Realty Corp.*, 759 F.2d at 1040; *City of N.Y. v. Exxon Corp.*, 633 F.Supp. 609, 614 (S.D.N.Y.1986) (Weinfeld, J.); *see Tri–County Business Campus Joint Venture v. Clow Corp.*, 792 F.Supp. 984, 993 (E.D.Pa.1992) (describing factors determining remedial actions, including action's taking over 12 months and costing over $1 million), although the delineation is not absolute. *Carlyle Piermont Corp. v. Federal Paper Bd. Co.*, 742 F.Supp. 814, 818 (S.D.N.Y.1990) (Lasker, J.).

Plaintiffs claim that their response was a "removal" pursuant to 42 U.S.C. § 9601(23) (1995), a characterization that the court does not challenge for the following reasons. First, a plaintiff's "own description of its cleanup efforts is a prime starting point for determining whether those efforts should be labelled as remedial or removal." *Tri–County Business Campus*, 792 F.Supp. at 992. Second, the Priscos' response actions may have been necessary to "prevent, minimize,

---

**6.** Defendants focus on the fact that there has been no finding of hazardous "waste" at the Prisco site according to state and federal statutes. (*See* Sachs Aff., Ex. P, PSA at I–7.) However, the terms hazardous "substances" and hazardous "waste" are terms of art, with very differ-

ent legal consequences. In order to trigger CERCLA liability, it is not necessary to establish the presence of hazardous "waste" under either state or federal law; it is only necessary to find hazardous "substances" as defined by CERCLA itself.

or mitigate damage to the public health or welfare or to the environment." 42 U.S.C. § 9601(23) (1995). The PSA confirmed the fact that "contamination has been released from the site" and that there are "threats to the public health and the environment," including the potential for human contact with contaminants and the release of "known carcinogens ... for fish, frogs, and small mammals." (Pls.' App., Ex. 30, PSA at I–8, I–7.) In addition, NYSDEC's Ward Stone claims that he witnessed "a major part of the construction debris sloping down into a small wetland" and "leachate coming out of the base of the landfill into the wetland." (Pls.' Mem. at 21, Ex. 28 at 28–29).[7] Plaintiffs specifically responded to the NYSDEC's warning that they were impermissibly placing refuse in ground or surface water. Third, an NYSDEC letter noted that the NYSDEC "reserves the right to require such further measures as may be appropriate to achieve proper closure of the site," implying that plaintiffs' response actions were preventive and temporary in nature. (Pls.' App., Ex. 26, Letter from Keller to Prisco of 2/5/88, at 1.) Fourth, the urgency with which the NYSDEC expressed the need for closing the landfill insinuates that closure of the landfill was a removal action. *See Channel Master Satellite v. JFD Elecs. Corp.*, 748 F.Supp. 373, 385 (E.D.N.C.1990). Finally, while excavation was performed in order to control leachate, an action often considered remedial, *see Tri–County Business Campus*, 792 F.Supp. at 992 (excavations are "more frequently associated with remedial actions"), excavation may also be considered a removal action. *Id.; see General Elec. Co. v. Litton Indus. Automation Sys., Inc.*, 920 F.2d 1415, 1419 (8th Cir.1990), *cert. denied*, 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991). Thus, plaintiffs' actions constitute a removal and hence a response under CERCLA. To the extent that plaintiffs can prove that costs were actually incurred, those costs can be considered response costs. Therefore, the fourth element of CERCLA has been met.

### D. Costs Necessary and Consistent with the NCP (fifth element)

■ 42 U.S.C. § 9607(a)(4)(B) (1995) states that in private cost recovery actions, plaintiffs may recover "any ... necessary costs of response incurred by any ... person consistent with the national contingency plan [ ("NCP") ]." CERCLA does not define "necessary costs of response," *United States v. Hardage*, 750 F.Supp. 1460, 1509 (W.D.Okl.1990), *aff'd in part and rev'd in part on other grounds*, 982 F.2d 1436 (10th Cir.1992), *cert. denied sub nom., Advance Chem. Co. v. United States*, —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993); *T & E Industries, Inc. v. Safety Light Corp.*, 680 F.Supp. 696, 705 (D.N.J.1988), but the courts have concluded that a response cost is necessary under CERCLA if the cost responded to a threat to public health or environment and the threat is not a theoretical one. *G.J. Leasing Co., Inc. v. Union Elec. Co.*, 854 F.Supp. 539, 562 (S.D.Ill.1994), *aff'd*, 54 F.3d 379 (7th Cir.1995); *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 669–670 (5th Cir.1989); *Louisiana–Pac. Corp. v. ASARCO, Inc.*, 735 F.Supp. 358, 362 (W.D.Wa.1990). The threat must exist prior to initiation of the response action, and the cost must be necessary to address the threat. *G.J. Leasing Co.*, 854 F.Supp. at 562; *Artesian Water Co. v. Government of New Castle County*, 659 F.Supp. 1269, 1278 (D.Del.1987), *aff'd*, 851 F.2d 643 (3d Cir.1988); *BCW Assoc., Ltd. v. Occidental Chem. Corp.*, No. 86–5947, 1988 WL 102641 (E.D.Pa.1988). Actions taken for purposes aside from responding to an actual public health threat do not meet CERCLA requirements. *G.J. Leasing Co.*, 854 F.Supp. at 562.

■ The Priscos argue that the response costs they incurred were necessary because they controlled leachate, which was ultimately shown to contain hazardous substances and to pose a threat to the environment. Defendants contend that the Priscos' actions

---

7. While pursuant to Chief Magistrate Judge Naomi Reice Buchwald's December 3, 1993 directive Stone may not be considered an "expert," Judge Buchwald stated, "[o]f course, this is not to say that Ward Stone may not be called as a fact witness by plaintiffs or to suggest that his testimony may not be helpful to plaintiffs." (Letter from Judge Buchwald to all counsel of 12/3/93, at 1.)

were not in response to a threat to the environment but were rather in response to a state order to close a landfill.

It has already been established that the Prisco site poses a real and not a theoretical threat to the public health and environment, as stated in the PSA. While plaintiffs' actions may have ultimately alleviated some threat to the environment, the court must determine whether the hazard existed prior to the Priscos' removal action.

Plaintiffs submit the following documentation as proof that their removal actions were in response to an environmental hazard: a copy of a facility inspection report conducted by Lawrence C. Gallagher, Assistant Sanitary Engineer of the NYSDEC, dated December 1, 1987, in which he checked off under the heading of "Leachate" that "Waste is being placed into water," (Pls.' App., Ex. 18); a letter from Gallagher to Prisco, dated December 16, 1987, in which Gallagher states that a December 11, 1987 inspection revealed that C & D material had been deposited in surface water, that the landfill was being operated without a permit, and that in order to prevent the initiation of enforcement procedures the plaintiffs must "1) immediately cease operation [ ] 2) cover the landfill by February 15, 1988, with 12 inches of material capable of sustaining vegetation [ ] 3) seed all covered areas with appropriate grass seed," (Pls.' App., Ex. 16, Letter from Gallagher to Prisco of 12/16/87, at 1); a letter from NYSDEC's Regional Director Paul D. Keller, dated January 11, 1988, stating that Prisco's "facility has 24 hours upon receipt of this letter to correct all problems at the site," (Pls.' App., Ex. 25, Letter from Keller to Prisco of 1/11/88, at 1); a letter from Keller dated February 5, 1988 stating that in response to a January 25, 1988 inspection which revealed non-compliance with permit exemption requirements, "specifically the placing of refuse in ground or surface water," the Priscos must "immediately cease operation, and cover the landfill by April 15, 1988 with 12 inches of material capable of sustaining vegetation, and seed all covered areas

with appropriate grass seed," (Pls.' App., Ex. 26, Letter from Keller to Prisco of 2/5/88, at 1); a letter from Gallagher, dated April 20, 1988 stating that "[i]n addition to the closure requirements outlined in my February 5, 1988 letter to you, you are required to remediate [sic] the drainage problems by implementing the drainage control ... plans" and to do so by July 15, 1988. (Pls.' App., Ex. 27, Letter from Gallagher to Prisco of 4/20/88, at 1.)

Plaintiffs claim that in response to such NYSDEC directives they had the C & D dredged, removed from the pond and leveled; the site excavated to make trenches for controlling the leachate problem and capped with clean dirt; and the premises seeded within approximately 8 weeks of the time they returned to the site on April 28, 1988. (*See* Thomas Prisco Dep. at ¶ 7.)

It is clear from the plaintiffs' submissions that waste was deposited in surface water, generating leachate and requiring immediate action to control the problem. The presence of leachate[8] and the urgency with which the NYSDEC ordered the closure and drainage control system suggests that the NYSDEC may have been aware of a threat to public health or to the environment. However, it is not clear from the evidence presented whether the NYSDEC suspected or knew at that time that there were hazardous substances at the site. Indeed, there is no specific mention of hazardous substances or such a threat. Accordingly, this is a genuine issue of material fact which must be determined. The fifth element of CERCLA has not been met and plaintiffs' cross-motion for summary judgment as to their CERCLA claim must be denied.

In light of the holding that whether plaintiffs' response costs were necessary presents a disputed issue of fact requiring denial of plaintiffs' cross-motion for summary judgment, whether plaintiffs' response costs were consistent with the NCP need not be addressed at this time. However, it should be pointed out that when this action proceeds to trial stage, plaintiffs must prove both that

---

**8.** Indeed, "collection of leachate" is defined as a "remedial action" under CERCLA. 42 U.S.C. § 9601(24) (1995).

388

the response costs were necessary and that the response costs were consistent with the NCP, if they are to prevail. *See Murtha,* 958 F.2d at 1198; *Alcan,* 990 F.2d at 720.

### E. Responsible Party (first element)

If a defendant is not a responsible party as outlined in § 9607(a), it will prevail in its motion for summary judgement under CERCLA. The court will now examine whether each defendant meets the criteria of the first CERCLA element. There are four types of parties potentially liable for response costs: (1) the owner and operator of a facility; (2) any person who at the time of disposal of any hazardous substances owned or operated a facility where such hazardous substances were disposed of; (3) any person who "by contract, agreement, or otherwise arranged for disposal or treatment" or transportation for disposal or treatment of hazardous substances at a facility owned or operated by another party and containing hazardous substances; and (4) any person who accepts or has accepted hazardous substances to transport to disposal or treatment facilities or other sites, from which there is a release or threatened release of a hazardous substance which causes response costs. 42 U.S.C. § 9607(a) (1995); *see General Elec. Co.,* 962 F.2d at 285; *Murtha,* 958 F.2d at 1198. Indeed, "[t]he Act's broad reach extends liability to all those contributing to— from generation through disposal—the problems caused by hazardous substances." *Murtha,* 958 F.2d at 1198.

 Defendant waste haulers are responsible parties pursuant to 42 U.S.C. §§ 9607(a)(4). It is undisputed that defendants transported C & D material to the Prisco site and disposed of the material at the site, thus subjecting themselves to CERCLA liability. *See General Elec. Co.,* 962 F.2d at 285 ("responsible parties include ... transporters of hazardous waste"); *Murtha,* 958 F.2d at 1198 (transporters and arrangers for disposal or treatment of hazardous substances are responsible parties). While Stamford did not deposit C & D mate-

rial as part of the alleged state "sting" operation, it is clear that Stamford entered into an agreement with plaintiffs which permitted Stamford to transport and dispose of demolition debris on the Prisco site, and that it in fact did transport and dispose of such waste, thus subjecting itself also to CERCLA liability pursuant to 42 U.S.C. §§ 9607(a)(3) & (4) (1995).[9]

 Defendants argue that even if there was a release or threat of release of hazardous substances at the Prisco site, defendants were not responsible for such harm and, hence, should not be liable. Once a defendant is identified as a responsible party, it is subject to CERCLA liability and the plaintiff need not show that a "specific defendant's waste caused occurrence of clean-up costs." *Alcan,* 990 F.2d at 721. The Second Circuit has concluded that "it seems plain ... CERCLA does away with a causation requirement." *Id.; accord Shore Realty Corp.,* 759 F.2d at 1044; *Dedham Water Co.,* 889 F.2d at 1154 ("there is nothing ... which requires proof that the defendant's hazardous waste actually have migrated to plaintiff's property, causing contamination of plaintiff's property, before CERCLA liability is triggered"); *United States v. Hooker Chems. & Plastics Corp.,* 680 F.Supp. 546, 549 (W.D.N.Y.1988) ("Generally, the [plaintiff] need not establish causation but need only show a given defendant meets the criteria of a 'responsible party' under section 107(a) in order to be held liable under CERCLA."); *see also A & N Cleaners & Launderers, Inc.,* 788 F.Supp. at 1324–25. The plaintiff "has no burden of proof with respect to what caused the release of hazardous waste and triggered response costs," and the defendant bears the burden of establishing a reasonable basis for the apportionment of liability. *Alcan,* 990 F.2d at 722. Here, plaintiffs argue that there is sufficient evidence to support their claim against defendants and that the harm caused by the defendants is indivisible, making liability joint and several. (Sclafani Decl. ¶ 4); *see also Murtha,* 958 F.2d at 1198; *A & N Cleaners &*

---

**9.** Plaintiffs argue that Stamford should also be considered an "operator" of the Prisco site. However, the court need not address this issue because Stamford is already liable as an arranger and transporter of hazardous substances.

*Launderers, Inc.*, 788 F.Supp. at 1323. All of the private defendants claim they only dumped C & D material on the Prisco property, but it has been established that hazardous substances were dumped at the Prisco site. Certainly, both scenarios can not be true.

A defendant which is otherwise liable as a responsible party may escape liability for response costs if it succeeds in proving that the release or threat of release was: (1) an act of God; (2) an act of war; or (3) an act or omission of a third party. 42 U.S.C. § 9607(b) (1995). More specifically, there is no liability if the defendant

> can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and damages resulting therefrom were caused solely by ... an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant ... if the defendant establishes by a preponderance of the evidence that (a) he exercised due care ..., and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result....

42 U.S.C. § 9607(b); *see Alcan*, 990 F.2d at 721–22 (where defendant can prove that its waste did not contribute to the release and clean-up costs or contributed to only a divisible portion of the harm, for which it will pay, there is no liability for response costs); *United States v. A & N Cleaners & Launderers, Inc.*, 854 F.Supp. 229, 244 (S.D.N.Y.1994) (Sweet, J.) (same).

 Stamford contends that plaintiffs offer no evidentiary facts to support their claims against Stamford and that it has established a third-party defense, precluding liability. In particular, Stamford asserts that, unlike the other private hauling companies, it demolishes buildings itself and transports only the debris from its demolition jobs to landfills. (Goldblum Aff. at ¶ 3.) Stamford also asserts that it received specific written permission from Thomas Prisco to dump solid waste on plaintiffs' site, (Sachs

Aff., Ex. C, Letter from Thomas Prisco to Stamford Wrecking Company of 6/4/87, at 1), and did so under the alleged direction and supervision of the plaintiffs or their employee, John B. Smith. (Goldblum Aff. at ¶ 13; Kaufman Aff. at ¶¶ 3, 4; Sachs Aff., Ex. I, Smith Dep. at 39–41, 61, 127–29, Ex. H, Thomas Prisco Dep. at 10, 16, 29–31, Ex. K, Filomena Prisco Dep. at 21–23, 290.) Stamford also contends that its notable absence from a list of "known potential responsible parties" for the Prisco landfill problem compiled by NYSDEC further bolsters Stamford's claim of nonliability. (Sachs Aff., Ex. O, Letter from P. David Smith to Christopher of 6/20/91, at 1–2.) Plaintiffs concede that they were present when Stamford deposited debris, that they inspected Stamford's debris at times, and that they told Stamford where to deposit the debris.

Stamford also insists that it disposed of its demolition debris solely in the northern portion of the plaintiffs' property, far from where the other private defendants disposed of their solid waste, and that therefore, it is impossible for Stamford to be liable for the release or threat of release of hazardous substances found in the southern portion of the site. Stamford offers as evidence the Priscos' depositions in which they state that the Stamford loads were dumped "to the north," (Sachs Aff., Ex. K, Filomena Prisco Dep. at 23), and on the "north side" of the Prisco property, (Sachs Aff., Ex. H, Thomas Prisco Dep. at 20), and Rich's affidavit, in which he states that he walked the "southern fill area" of the site, noting hazardous substances and leachate emanating from the waste and infiltrating the pond on the "western to southwestern portion of the landfill." (Rich Aff. at ¶¶ 1, 6.)

However, plaintiffs argue that Stamford "did, in fact, deposit solid waste in the very same area as the remaining private defendants." (Pls.' Mem. at 12.) Filomena Prisco stated that "*[m]ost* of the debris deposited by Stamford Wrecking was on the north end of [the Priscos'] property," (Filomena Prisco Aff. at ¶ 4) (emphasis added), not precluding the possibility that some of Stamford's waste was deposited elsewhere. Smith states that

Stamford dumped in areas "E" and "F" of the landfill as marked by Smith on the "Site Plan Prisco C & D" map produced by the NYSDEC. (Pls.' Mem. at 12–13, Ex. 14, Smith Dep. at 193–94 and accompanying map.) Areas "E" and "F" indicate the locations where C & D material was deposited from November, 1987 to January, 1988, and "X" indicates the locations where Stamford deposited waste within those areas. *Id.* Smith's deposition suggests that Stamford deposited waste in the southern portion of the landfill, where the "X" in area "F" is located, approximately 100 feet southeast of the pond, *see id.*, thereby making it possible that Stamford contributed hazardous substances to the landfill along with the other defendants.

Relying on Rich's assessment, plaintiffs assert that the hazardous substances found at the Prisco site are characteristic of and constituents of C & D material and household waste, (Rich Aff. at ¶ 12; Pls.' Mem. at 47, Ex. 28, Stone Dep. at 62–66), and that therefore, Stamford, like all of the private defendants, may be liable under CERCLA. *See United States v. Monsanto Co.*, 858 F.2d 160, 169 (4th Cir.1988) (hazardous substances similar to those present in a generator defendant's waste or "that could have been produced by the mixture of the defendant's waste with other waste present at the site" are sufficient for CERCLA liability), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). Rich concluded that "[a]s with all solid waste facilities of this type involving multiple generators, after the material has been commingled, it is impossible to determine the source of each piece of debris," and in particular, "[i]t is impossible to determine the party responsible for the contaminated leachate that is emanating from the site." (Rich Aff. at ¶ 12.)

Stamford argues that Rich's assessment is invalid given the fact that he visited the site for a mere hour, conducted no sampling or testing of the site, and did not personally observe or smell any evidence of hazardous waste at the site. (Sachs Aff., Ex. R, Rich

Dep. at 29–30, 32.) Defendant relies on *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 824 (5th Cir.1993), *cert. denied sub nom.*, *Cooper v. Armstrong Rubber Co.*, —— U.S. ——, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994), in which the Fifth Circuit granted the defendant's motion to dismiss a private cost recovery action under CERCLA because "the expert's opinion [was] so unreliable that no reasonable expert could base an opinion on [the] data." In *Berry* the plaintiffs conceded that there was no test data of the soil or water from their site and that they relied solely upon experts' testimony to provide circumstantial evidence of hazardous substances. *Id.* at 825. In *Berry*, plaintiffs' experts relied not only on tests and samples conducted by others but also on those involving soil taken from property not involved in the case, on physical observations of waste at sites unrelated to the one at issue, on studies with questionable methodologies, and on models over which the experts had no expertise or understanding. *Id.* at 825–28. *Berry* is easily distinguishable from the present case where Rich bases his conclusions on his own observation of the site, however cursory, and on the assessment of the PSA. Plaintiffs also submit the deposition of Stone, who concluded that it is not possible to determine from where the solid waste at the site originated.[10] (Pls.' Mem. at 21, Ex. 28 at 212.)

Stamford also claims that if there was a release or threatened release of hazardous substances, it occurred after Stamford finished depositing its C & D material at the Prisco site; that it disposed of demolition debris at plaintiffs' landfill between June 4, 1987 and October 2, 1987, (Goldblum Aff. at ¶¶ 9, 11, Ex. C, Letter from Thomas Prisco to Stamford Wrecking Co. of 6/4/87, at 1; De Salle Aff. at ¶ 5(iii), Ex. F, copies of dump tickets issued to Stamford by Prisco); and that the alleged "sting" operation by the state "did not commence until after ... Stamford ceased disposing of demolition debris at the Prisco site" sometime in October, 1987. (Statement of Undisputed Material Facts on Behalf of Def. Stamford Wrecking Co. Pursuant to S.Dist.Civ. Rule 3(g) at ¶¶ 3,

---

10. Commingling, however, is not the same as indivisible harm, and defendants should have the opportunity to show that the harm caused is capable of reasonable apportionment. *Alcan*, 990 F.2d at 722.

7.) Plaintiffs claim that Stamford deposited waste on the Priscos' property from approximately late May, 1987 to early fall, 1987, (Pls.' Statement & Counterstatement Pursuant to Local Rule 3(g) ("Pls.' 3(g) Statement") at ¶ 13; Filomena Prisco Aff. at ¶ 5; Sachs Aff., Ex. K, Filomena Prisco Dep. at 15, 20), and that the starting date of the alleged "sting" operation is unknown. (Pls.' 3(g) Statement at ¶ 16.) Plaintiffs concede that by November 12, 1987, Stamford was no longer depositing waste on plaintiffs' property and that "[o]nly defendant Stamford Wrecking did not deposit material during the State operation of the facility from November, 1987 to February, 1988." (Pls.' Mem. at 5, 12; see Sachs Aff., Ex. K, Filomena Prisco Dep. at 24.; Sachs Aff., Ex. H, Thomas Prisco Dep. at 85–86.)

While Stamford may have ceased dumping its waste at the Prisco site prior to the beginning of the alleged "sting" operation, it does not follow that Stamford's waste could not have contributed to the hazardous substances found at the site. Stamford has not submitted any evidence showing that the hazardous substances found at the site must have been deposited after the fall of 1987 and that, therefore, Stamford could not have contributed to the illegal landfill. Filomena Prisco claims that Bubenicek inspected the portion of plaintiffs' property where Stamford had been depositing C & D prior to the state operation and that she was told that "everything looked very good," (Filomena Prisco Aff. at ¶ 6); however, this single proclamation does not convince the court that only third parties could have been responsible for the presence of hazardous substances at the site.

In sum, Stamford has not persuaded the court that the release or threat of release of hazardous substances and the resulting damages were caused solely by a third party. Therefore, the court denies Stamford's motion for summary judgment pursuant to the CERCLA claim.

■ Danna argues that it can not be held liable for any of the hazardous substances found at the Prisco site because it was licensed by the state and the city of New York to collect only garbage and C & D material,

not hazardous waste. Furthermore, Danna argues that it had no connection with the "sting" operation or organized crime. However, none of these explanations mean that Danna could not have deposited hazardous substances at the Prisco site. Danna even argues that it could not have been responsible for depositing the hazardous substances because when Smith actually identified a Danna truck dumping "objectionable material" at the site, Smith stopped it from actually dumping the material. (See Smith Dep., at 110.) Because Smith was able to successfully identify Danna attempting to dump impermissible materials on one occasion does not mean that there were not other occasions on which Smith was less successful. Indeed, Danna's argument only bolsters plaintiffs' contention that Danna and other defendants deposited materials other than C & D which resulted in contamination of the site. Danna has not shown that the release or threat of release of the hazardous substances and the resulting damages were caused solely by a third party. Thus, disputed issues of fact remain and Danna's motion for summary judgment as to CERCLA must be denied.

None of the other private waste haulers offer proof of a third party defense under 42 U.S.C. § 9607(b) (1995), so their motions for summary judgment as to the CERCLA claim are also denied. Given that defendants' liability is "subject only to the defenses set forth in subsection (b) of [42 U.S.C. § 9607]," 42 U.S.C. § 9607(a) (1995), see Murtha, 958 F.2d at 1198 ("[p]otential affirmative defenses are limited to those listed in § 9607(b)"), plaintiffs' motion to strike impermissible affirmative defenses under CERCLA is granted.

### F. Motion to Dismiss

■ Defendants contend that in order for plaintiffs to bring a CERCLA action plaintiffs must allege that they are liable or potentially liable under CERCLA. The court does not agree with this interpretation. 42 U.S.C. § 9613(f)(1) (1995) states,

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title,

during or following any civil action under ... section 9607(a) of this title.

This provision enables defendants to seek contribution from other defendants. However, it does not require a plaintiff to admit to its own potential or real liability. The courts are clear that a *prima facie* cause of action under CERCLA is established when the five elements previously mentioned are met. *See Murtha*, 958 F.2d at 1198. Assuming plaintiffs' allegations to be true and drawing inferences in favor of the Priscos, it is clear that plaintiffs have sufficiently alleged a CERCLA cause of action. Thus, defendants' motion to dismiss the CERCLA claim is denied.

### G. Future Response Costs

■ The plaintiffs request a declaratory judgment establishing the rights and liabilities of all parties regarding contamination of the Prisco site and defendants' obligations for future response costs pursuant to 42 U.S.C. § 9607(a)(4)(B). "Numerous courts have entertained claims for declaratory judgment as to liability for future response costs under section 9607 of CERCLA." *Arawana Mills Co. v. United Technologies Corp.*, 795 F.Supp. 1238, 1247 (D.Conn.1992) (citing cases). In *Arawana Mills,* plaintiffs alleged that defendants were responsible for hazardous substances that were released on plaintiffs' property, and they sought a declaration as to potential future liability under CERCLA. The court rejected defendants' contention that the claim was not ripe and concluded that

> [i]nasmuch as plaintiff has alleged that there was a release of hazardous substances on the Property during the time defendants operated the overhauling and servicing facility, plaintiff has alleged "the occurrence of the essential facts establishing its right to a declaratory judgement." [cite omitted.]

*Arawana Mills,* 795 F.Supp. at 1247; *accord Cadillac Fairview/Cal., Inc. v. Dow Chem. Co.,* 840 F.2d 691, 696 (9th Cir.1988); *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 893 (9th Cir.1986). Here, the Priscos have alleged that there was a release of hazardous substances on their property during the time that the defendant waste haulers deposited C & D material at the facility.

The Priscos have thus alleged the occurrence of the essential facts establishing their right to a declaratory judgment, and the court grants plaintiffs' motion for declaratory relief for future response costs.

### II. RCRA

■ The plaintiffs seek injunctive relief and reimbursement costs pursuant to Section 7002 of RCRA, 42 U.S.C. § 6972(a) (1995). Pursuant to § 6972(a)(1)(B), plaintiffs may bring a civil action

> against any person ... and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed, or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

Defendants contend that the Priscos' RCRA claim should be dismissed for failure to state a claim upon which relief may be granted because plaintiffs' cause of action is based on 42 U.S.C. § 6972(a)(1)(A) (1995), (Complaint, ¶ 80), which states that a citizen may bring a civil suit against any person who is allegedly in violation of a "permit, standard, regulation, condition, requirement, prohibition or order." Defendants aptly point out that the complaint does not make reference to any regulatory violation. In addition, plaintiffs base their cause of action on 42 U.S.C. § 6973 (1995), stating that the "handling, storage, treatment and disposal or solid waste, chemicals, pollutants, hazardous substances and hazardous waste at the facility has presented, presents and will present an imminent and substantial endangerment and hazard to health and the environment" and that therefore the defendants should be jointly and severally liable. (Complaint ¶ 88.) Again, defendants rightfully argue that 42 U.S.C. § 6973 (1995) authorizes the Administrator of the EPA and not private citizens to bring a RCRA suit, making 42 U.S.C. § 6973 (1995) inapplicable to the Priscos.

However, "[t]he complaint should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 at 337 (1990); *Bowers v. Hardwick*, 478 U.S. 186, 202, 106 S.Ct. 2841, 2849–50, 92 L.Ed.2d 140 (1986). Here, plaintiffs cited 42 U.S.C. § 6972 (1995), arguing that a citizen may bring a suit against another for an RCRA violation. However, plaintiffs proceeded under an inapplicable theory, that there was a permit violation. Upon examination of the complaint, however, it is clear that the plaintiffs' allegations are supported by another theory that plaintiffs actually mentioned but miscited to 42 U.S.C. § 6973 (1995). Because the complaint's allegations provide for relief under 42 U.S.C. § 6972(a)(1)(B) (1995), and the complaint sets out facts which support a potential favorable judgment, plaintiffs' RCRA cause of action should not be dismissed. *Anglo Am. Ins. Group v. CalFed, Inc.*, 92 Civ. 9137, slip op. at 28, 1995 WL 507276 (S.D.N.Y. Aug. 25, 1995) (Carter, J.) (citing *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–02).

Relying on *Brewer v. Ravan*, 680 F.Supp. 1176, 1182 (M.D.Tenn.1988), defendants also argue that plaintiffs must allege what particular hazardous waste were stored, disposed of, and dumped by defendants and under what specific circumstances it occurred. In *Brewer*, a RCRA case brought under 42 U.S.C. §§ 6925 and 6945, the court found that plaintiffs' complaint simply retraced the language of RCRA and alleged solely unsupported legal conclusions cast in the guise of facts. *Id.* Here, plaintiffs' complaint includes the names of specific hazardous wastes as defined by RCRA, (*see* Complaint at ¶ 74), and describes the circumstances under which each defendant dumped its C & D material, from which these hazardous substances came. In particular, the complaint alleges that methyl ethyl ketone, acetone, xylene and toluene, which are listed in 40 C.F.R. § 261.31 (1995) as hazardous waste, were present in plaintiffs' ground water, soil and land, and that such waste com-

ports with the RCRA's definition of hazardous waste, 42 U.S.C. § 6903(5) (1995), and solid waste, 42 U.S.C. § 6903(27) (1995). In addition, the complaint specifies that each defendant "generated, and after payment of a fee, released, deposited, selected and arranged for disposal its construction and demolition material and debris, waste and hazardous waste at the facility." (Complaint, ¶¶ 22–56.) In sum, the court rejects defendants' motion to dismiss plaintiffs' RCRA claim.

We turn next to defendants' motions for summary judgment and plaintiffs' cross-motion for summary judgment on the RCRA claim. Defendants are all "person[s]," as defined by 42 U.S.C. § 6903(15) (1995), and operators, generators, or transporters as discussed earlier. Defendants have each contributed to the handling, storage, transportation, or disposal of a solid or hazardous waste. Defendants contend that there is no evidence that "hazardous waste" was deposited onto the Priscos' property. However, the complaint alleges that methyl ethyl ketone, acetone, xylene and toluene, which are listed in 40 C.F.R. § 261.31 as hazardous wastes, were present in plaintiffs' ground water, soil and land. The PSA confirmed the fact that such hazardous wastes were present at the Prisco site. The RCRA defines "hazardous waste" as

> a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

42 U.S.C. § 6903(5) (1995).

The PSA concluded that the wastes found at the Prisco site threatened public health and the environment. Furthermore, the statute only requires that defendants be involved with a "solid *or* hazardous waste." 42 U.S.C. § 6972(a)(1)(B) (1995) (emphasis add-

ed). "Solid waste" includes "any garbage, refuse, ... other discarded material ... from industrial [and] commercial ... operations...." 42 U.S.C. § 6903(27) (1995). It is undisputed that C & D material is solid waste. Section 6903(3) defines "disposal" as

the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

All of the defendants concede that they deposited, dumped or transported solid waste, or C & D material, on the Priscos' property. Some private haulers may have even deposited such waste directly into the Priscos' pond. (*See* Pls.' App., Smith Dep. at 61, Ex. 14.)

▆▆▆ Defendants argue that pursuant to 42 U.S.C. § 6972(a)(1)(B) (1995), plaintiffs have not met their burden of proving an imminent and substantial danger to health or the environment. Defendants contend that the solid or hazardous waste "must" pose an imminent and substantial danger to health and the environment. However, the statute only requires that plaintiffs show that the waste "may" pose such a threat. *See Dague v. City of Burlington*, 935 F.2d 1343, 1356 (2d Cir.1991), *rev'd in part on other grounds*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). Thus, the court will use the latter standard. The Second Circuit noted that Congress used such "expansive language" in order to confer upon the courts the power to "grant affirmative equitable relief to the extent necessary to eliminate *any risk* posed by toxic wastes." *Dague*, 935 F.2d at 1355 (citation omitted).

▆▆▆ The statute is designed to prevent future harm and is not limited to emergency situations. *Id.* at 1355–56. Imminence refers to the nature of the threat and not to the time of the endangerment. Indeed, "immanency" does not mean that actual harm will occur immediately but rather that there is a risk of threatened harm. *Id.* at 1356. Finally, where there is no suggestion beyond mere allegation of an imminent and substantial endangerment, there is no

genuine issue of fact in a motion for summary judgment. *Vernon Village, Inc. v. Gottier*, 755 F.Supp. 1142, 1155 (D.Conn.1990).

Defendants assert that plaintiffs' expert Rich, among others, is unclear about how dangerous the Prisco site is to the environment. Indeed, Rich conceded that "there's not enough information in the [PSA] to indicate with any degree of certainty whether or not the landfill does in fact have an imminent—an impact to imminent endangering of health and the environment with respect to the wetland area." (Rich Dep. at 234.) As discussed earlier, the PSA stated that "contamination has been released from the site to the groundwater, surface water, and sediment" and that there are "threats to the public health and environment," which include potential human contact with contaminants and the release of "known carcinogens ... for fish, frogs, and small mammals." (Pls.' App., Ex. 30, PSA at I–8, I–7.) In addition, Stone claims that he witnessed construction debris sloping into a wetland and leachate coming out of the Prisco landfill into the wetland. (Pls.' Mem. at 21, Ex. 28 at 28–29.)

Plaintiffs contend that there is hazardous waste at the Prisco site. 42 U.S.C. § 6903(5) (1995) states that "hazardous waste" is

solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

Indeed, the PSA found numerous substances which might be considered hazardous waste under the circumstances under 42 U.S.C. § 6903(5) (1995) and some which are, by definition, hazardous substances under 40 C.F.R. § 261.31 (1995). It is not clear from the record whether in fact there is an imminent and substantial endangerment of health or the environment, however, plaintiffs have

made a sufficient showing that there "may" be such an endangerment.

■ Defendants contend that even if plaintiffs prevail in showing a possible imminent endangerment, they can not receive relief under RCRA because the statute provides only injunctive relief, and not damages. RCRA's citizen suit provision states that the court has the power to "restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste ..., [and] to order such person to take such other action as may be necessary, or both...." 42 U.S.C. § 6972(a)(2) (1995) (emphasis added).

The courts are divided on the question whether 42 U.S.C. § 6972(a)(1)(B) (1995) allows a citizen plaintiff only equitable relief, such as an injunction requiring the abatement of the hazardous waste at the site, or whether a citizen may also seek restitution for cost incurred in a clean-up. *Acme Printing Ink Co. v. Menard, Inc.,* 881 F.Supp. 1237, 1248 n. 8 (E.D.Wis.1995); *compare Furrer v. Brown,* 62 F.3d 1092, 1100–02 (8th Cir.1995) (denying plaintiffs a remedy for costs they incurred in a clean-up because court could not find congressional intent for such a remedy); *Commerce Holding Co. v. Buckstone,* 749 F.Supp. 441, 445 (E.D.N.Y. 1990) (concluding that even if plaintiff's request for costs for remediation was construed as request for equitable relief, it could not be maintained under RCRA because the plaintiff "would be the direct beneficiary of the substantive relief") *with KFC Western, Inc. v. Meghrig,* 49 F.3d 518, 523–24 (9th Cir. 1995) (arguing that forbidding recovery of restitutive costs is unfair and poor public policy, where innocent citizens are ordered to remedy a clean-up through no fault of their own); *United States v. Price,* 688 F.2d 204, 213–14 (3d Cir.1982).

This court has held that the "RCRA does not authorize a plaintiff in a citizen suit to recover remediation costs.... To hold otherwise would allow parties to pursue private remedies rather than acting as private attorney generals. Such was not the intention of the RCRA." *Gache v. Town of Harrison, N.Y.,* 813 F.Supp. 1037, 1045 (S.D.N.Y.1993) (Goettel, J.). Therefore, the Priscos' request for reimbursement costs under the RCRA must be denied.

■ Given that only injunctive relief is available, wholly past violations of RCRA can not be subject to citizen suits under § 7002 of the RCRA. *Gache,* 813 F.Supp. at 1041. Defendants argue that since they stopped depositing C & D material at the Prisco site in 1988 they can not be continuing to violate RCRA, and therefore, there can be no RCRA action against them. However,

> [t]he environmental harms do not stem from the act of dumping when waste materials slide off the dump truck but rather after they land and begin to seep into the ground, contaminating soil and water. So long as wastes remain in the landfill threatening to leach into the surrounding soil and water, a continuing violation surely may exist.

*Id.* As long as the waste has not been cleaned up and the environmental damage has not been sufficiently remedied, there remains an ongoing RCRA violation. *Id.* Thus, defendants may still be subjected to a RCRA cause of action if plaintiffs can show that there is an ongoing imminent and substantial endangerment to health or the environment.

■ The Priscos contend that the waste at the site has not been cleaned up and that the environmental effects must still be remedied. (Letter from Sclafani to Carter, J. of 4/21/94, at 2.) Plaintiffs submit a NYS-DEC report dated May 3, 1995 which lists volatile organics found in the drinking water of the Priscos' well at excessive levels. (Letter from Sclafani to Carter, J of 5/23/95, at 1 & attached report.) In particular, 1,1–dichloroethene, 1,1–dichloroethane, and 1,1,1–trichlroethane were found at dangerous levels. *Id.* Indeed, in response to such findings, the state defendant conceded that "results of those tests ... show the water in the Priscos' well to be unsafe" and that "the Priscos' well is now contaminated is a fact which certainly will be considered in developing a plan for the proper final closure of the Priscos' landfill." (Letter from Nolan to Carter, J. of 6/8/95, at 1.)

However, in the same breath, the defendants argue that plaintiffs' latest submission is "prejudicial" and that other drinking water tests conducted on May 23, 1995 at the Prisco site, along with a May 25, 1995 letter from the Putnam County Department of Health stating that such tests indicate that the Priscos' water is of "satisfactory drinking water quality," should be submitted into evidence. (Letter from Nolan to Carter, J. of 6/8/59, at 2 & attached report.)

Plaintiffs contend that the site continues to leach hazardous substances and wastes into the wetlands surrounding the Prisco site. Plaintiffs submit an affidavit by Rich dated March 25, 1994, which states that "as of December 2, 1993, leachate was continuing to emanate" from the site; that "there has been a 'continuing' release" of hazardous substances and wastes into the wetlands, surface water and groundwater; that the "NYSDEC clearly failed to mitigate a potential and now real, threat to the environment;" that "[t]he conditions as they presently exist at the site may cause an imminent and substantial threat to the local water supply of Patterson and may ultimately cause harm to the New York City water supply system;" and that there is a "continuing threat to the public and the environment." (Rich Aff. at ¶¶ 6, 7, 9, 15.) The PSA indicates that further study and investigation of the site is necessary to determine the extent of the contamination and impact on the environment. (Pls.' App., Ex. 30, PSA at I–8.)

Whether or not there remains waste in the landfill which threatens to leach into the surrounding soil and water and to create an imminent and substantial danger to health or the environment is a genuine issue of material fact which must be resolved prior to a RCRA determination of liability. Therefore, defendants' motions for summary judgment are denied as to the RCRA claim, and plaintiffs' cross-motion for summary judgment as to the RCRA claim is denied.

### III. CWA

The Priscos seek recovery under section 301(a) of the CWA, 33 U.S.C. § 1251 et seq. (1986), alleging that defendants "violated and continue to violate" 33 U.S.C. § 1311(a) (1995) by unlawfully discharging pollutants into and onto the Priscos' property, which consists of a pond and wetlands. Plaintiffs seek injunctive relief and civil penalties, including reimbursement costs, pursuant to 33 U.S.C. §§ 1365(a) & 1319(d) (1995) on account of defendants' discharge of fill material into wetlands without a permit. Defendants contend that the Priscos' CWA claim must be dismissed as moot because defendants stopped discharging fill material at the Prisco site at the latest by March 1, 1988, four and one half years prior to the commencement of the lawsuit. Therefore, defendants argue that all alleged violations of the CWA have ceased and that plaintiffs have no recovery under the CWA.

The CWA empowers federal and state authorities to issue permits for pollution discharge within certain defined limits. See, e.g., 33 U.S.C. § 1342(a) (1995) (federal); 33 U.S.C. § 1342(b) (1986) (state). However, outside of the CWA's provisions, the statute states that "the discharge of any pollutant by any person shall be unlawful," 33 U.S.C. § 1311(a) (1986), and violators may be subject to civil and criminal penalties. See 33 U.S.C. §§ 1319(d) (1995), 1319(c) (1995). Furthermore, the CWA asserts that "any citizen may commence a civil action on his own behalf—(1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter...." 33 U.S.C. § 1365(a)(1) (1986). The CWA defines an effluent standard or limitation, inter alia, as an unlawful act under 33 U.S.C. § 1311(a). 33 U.S.C. § 1365(f) (1995). Finally, in the case of a CWA citizen suit, "[t]he district courts shall have jurisdiction ... to enforce such an effluent standard or limitation, ... and to apply any appropriate civil penalties under section 1319(d) of the title." 33 U.S.C. § 1365(a) (1995).

In Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 64, 108 S.Ct. 376, 385, 98 L.Ed.2d 306 (1987), the Supreme Court held that citizen suits brought under the CWA can not be based on wholly past violations. City of N.Y. v. Anglebrook Ltd. Partnership, 891 F.Supp. 900, 904–05 (S.D.N.Y.1995) (Parker, J.); Atlantic States Legal Found., Inc. v. Whiting Roll–

*Up Door Mfg. Corp.,* 772 F.Supp. 745, 752 (W.D.N.Y.1991). In particular, the Court focused on the statute's provision that a citizen may bring a CWA action against any person "who is alleged *to be in violation* of . . . an effluent standard or limitation." 33 U.S.C. § 1365(a) (1986) (emphasis added). Analyzing the plain statutory language, the statutory scheme, and the legislative history, the Court concluded that the phrase "to be in violation" did not confer federal jurisdiction of citizen lawsuits for wholly past violations. *Gwaltney,* 484 U.S. at 56–63, 108 S.Ct. at 380–84.

While conceding that the phrase was ambiguous, the Court ultimately concluded that "to be in violation" means that a citizen plaintiff must allege "a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney,* 484 U.S. at 57, 59, 108 S.Ct. at 381, 382 ("[T]he harm sought to be addressed by the citizen suit lies in the present or the future, not in the past."). Rejecting the contention that Congress forgot to include language referring to past violations, the Court noted that the CWA's language paralleled that of other environmental statutes, such as the Clean Air Act, which provided for prospective relief only. *Id.* Given Congress's explicit use in RCRA of provisions for past violations and its consistent use of the present tense describing violations in CWA, it is clear that Congress intended for the CWA violation to be ongoing. *Id.* at 57–58, 108 S.Ct. at 381–82. Finally, the Court concluded that a CWA citizen suit should only be dismissed if the plaintiff did not allege that a defendant was in violation of CWA and if plaintiff's allegation was not made in good faith. *Id.* at 65, 108 S.Ct. at 385.

Upon remand, the Fourth Circuit further clarified that a good faith allegation of continuous or intermittent violations is made when a citizen plaintiff proves that a violation continued on or after the complaint is filed or "adduces evidence from which a reasonable trier of fact could find a continuing likelihood in intermittent or sporadic violations." *Chesapeake Bay Found., Inc. v. Gwaltney. of Smithfield, Ltd.,* 844 F.2d 170, 171–72 (4th Cir.1988), *aff'd in part and rev'd in part on other grounds,* 890 F.2d 690 (4th Cir.1989).

Here, the Priscos have alleged a continued violation of CWA in their citizen suit, (*see* Complaint, ¶ 111), but it can not be said to be in good faith. *See, e.g., Anglebrook Ltd. Partnership,* 891 F.Supp. at 904–05 (current flawed plan filed in violation of permit requirements constitutes present CWA violation). It is undisputed that defendants stopped discharging C & D material or any material onto the Priscos' property at the latest by March 1, 1988, four and one half years prior to the commencement of plaintiffs' suit on August 21, 1992. It is extremely unlikely at this point that any of the individual defendants would resume depositing C & D material at the Prisco site. Rather than being paid for depositing the solid waste at the site as in the past, defendants are now being sued for such action, thereby, creating very little incentive for defendants' resumption of such action.

In *Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.,* 688 F.Supp. 1078 (E.D.Va.1988), *aff'd in part and rev'd in part on other grounds,* 890 F.2d 690 (4th Cir.1989), upon remand from the Fourth Circuit the district court ultimately held that citizen plaintiffs alleged a continuous violation of CWA where there was "unrefuted evidence of intermittent violations" and of a likelihood of repetition by defendant who had taken prior remedial measures.

Here, there is absolutely no reason to believe that the defendant waste haulers would return to the Prisco site, and no reasonable trier of fact would hold this view.

> In seeking to have a case dismissed as moot . . . the defendant's burden "is a heavy one." . . . The defendant must demonstrate that it is "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." [citations omitted]

*Gwaltney,* 484 U.S. at 66, 108 S.Ct. at 386 (emphasis added). The court is convinced that defendants have met this burden and that the CWA claim is moot. Defendants' motions to dismiss the CWA claim are granted, and accordingly all parties' motions for

summary judgment as to the CWA claim are denied.

### IV. Notice Requirement to Top Job

Defendant Top Job Sanitation ("Top Job") argues that unlike any of the other individual defendants it was not provided sufficient notice of the plaintiffs' citizen suit claims against it under the RCRA, 42 U.S.C. § 6972(b) (1995) and CWA, 33 U.S.C. § 1365(b) (1986). Top Job argues that pursuant to 42 U.S.C. § 6972(b) (1995), a party must provide at least 60 days notice to a proposed defendant prior to initiating a RCRA citizen suit. *See* 42 U.S.C. § 6972(b)(1)(A)(iii) (1995). Top Job incorrectly cites to the time period for RCRA citizen suits brought under 42 U.S.C. § 6972(a)(1)(A) (1995). In such cases as here, a party must provide at least 90 days notice to a proposed defendant before initiating the action. *See* 42 U.S.C. § 6972(b)(2)(A)(iii) (1995). In CWA litigation, pursuant to 33 U.S.C. § 1365(b)(1)(iii) (1986), a party must provide at least 60 days notice to a proposed defendant prior to initiating a citizen suit.

Plaintiffs provided notice of intent to commence a RCRA citizen suit against Top Job on August 6, 1992, (*see* Engel Aff., Ex. I, Letter from Sclafani to Top Job of 8/6/92, at 1), which Top Job received on August 10, 1992. (*See* Pls.' App., Ex. 45.) Plaintiffs then filed their summons and complaint on August 21, 1992. On November 6, 1992 Top Job was served with plaintiffs' second amended complaint, (*see* Pls.' App., Ex. 46), and on November 25, 1992, Top Job requested a four-week extension to answer. (*See* Pls.' App., Ex. 47.) Top Job served its answer to the second amended complaint on December 22, 1992 and pleaded its affirmative defenses. (*See* Pls.' App., Ex. 48.) Top Job concludes that it did not receive mandatory statutory notice before the first summons and complaint was filed and that therefore the RCRA claim should be dismissed against Top Job.

In *Hallstrom v. Tillamook County*, 493 U.S. 20, 31, 110 S.Ct. 304, 311, 107 L.Ed.2d 237 (1989), *reh'g denied*, 493 U.S. 1037, 110 S.Ct. 761, 107 L.Ed.2d 777 (1990), the Supreme Court held that applicable notice and delay requirements "are mandatory conditions precedent to commencing suit under the RCRA citizens suit provision; a district court may not disregard these requirements at its discretion." *Accord Zands v. Nelson*, 779 F.Supp. 1254, 1258 (S.D.Cal.1991).

However, in response to the *Hallstrom* decision, the Second Circuit carved out an exception to the rigid notice and delay requirements in cases where plaintiffs allege a claim "respecting a violation of subchapter III" of the Solid Waste Disposal Act, codified as 42 U.S.C. §§ 6921–6939e (1995), which deals with hazardous waste management. *Dague*, 935 F.2d at 1350. The Second Circuit reasoned that when plaintiffs bring hazardous waste pollution claims under subchapter III, notice and delay requirements associated with other related claims brought in the same action should be abrogated because of the government's strong desire to encourage citizens to bring their suits immediately. *Dague*, 935 F.2d at 1351. Indeed, Congress amended the RCRA in 1984 so that the notice and delay exception was explicit and prompt citizen enforcement against hazardous waste would be possible. *Id.*

■ Plaintiffs contend that Top Job's argument runs counter to the *Dague* exception. However, in this case the Priscos have not brought a hazardous waste pollution claim under subchapter III, which consists of 42 U.S.C. §§ 6921–6939e (1995). Instead, plaintiffs have brought a claim under 42 U.S.C. § 6972 (1995). Therefore, the *Dague* exception is inapplicable, and the district court does not have the discretion to ignore the notice and delay provisions.

Plaintiffs characterize the notice and delay requirements as an affirmative defense, arguing that Rule 8(c), F.R.Civ.P., requires a defendant to plead all affirmative defenses in its answer. *See Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir.1984); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1278, at 477 (1990). However, in *Hallstrom* the Supreme Court did not require defendants to raise the notice and delay requirement as an affirmative defense, but held that failure of the plaintiff to meet the notice and 60–day delay requirements of 42 U.S.C.

§ 6972(b) necessitated dismissal since the action was barred by the terms of the statute, despite the fact that the case had gone to trial and the plaintiffs had won on the merits. *Dague,* 935 F.2d at 1351.

■ Here, there is no evidence that Top Job was ever served the first summons and complaint. Furthermore, even if Top Job was served with this summons and complaint, there is nothing to suggest that Top Job was brought into the case as a defendant at that time. The caption does not mention Top Job until the second summons and amended complaint, suggesting that the first summons and complaint did not contain the RCRA citizen suit provision as to Top Job. *See Zands,* 779 F.Supp. at 1258–59. Given that Top Job was served only the second summons and amended complaint, which contains the RCRA citizen suit as to Top Job, Top Job received adequate notice and delay, as required by statute. *Id.* (where private citizen suit against defendant did not appear until third amended complaint notice and delay period was assessed from third amended complaint). Thus, the court denies Top Job's motion to dismiss plaintiffs' RCRA claim against it.

Plaintiffs do not offer any evidence or contest Top Job's accusation that it was not given the 60–day notice and delay prior to the CWA citizen suit being brought against it. Therefore, the court must dismiss plaintiffs' CWA claim brought against Top Job for failure to comply with the statutory notice and delay requirements. *See National Envtl. Found. v. ABC Rail Corp.,* 926 F.2d 1096, 1097–98 (11th Cir.1991) (using *Hallstrom* for guidance, 60–day notice requirement is mandatory condition precedent to filing citizen suit under CWA, and noncompliance with requirement warrants dismissal); *Hudson Riverkeeper Fund, Inc. v. Putnam Hosp. Cntr., Inc.,* 891 F.Supp. 152, 153 (S.D.N.Y. 1995) (Parker, J.).

### V. State Claims

■ The plaintiffs seek damages for alleged violation of their civil and property rights under state and common law theories of liability. Stamford seeks summary judgment on these claims, arguing that the Priscos have failed to produce evidence that Stamford deposited debris near a "wetland" or "pond" as required by the Freshwater Wetlands Act, N.Y.Envtl.Conserv.Law § 24–0107 (McKinney 1984). As discussed earlier, the location of Stamford's dumping is a genuine issue of material fact which precludes granting summary judgment. Therefore, the court denies Stamford's motion for summary judgment as to this state law claim.

Danna alleges that in bringing their common law claim for private and public nuisance, plaintiffs failed to articulate or prove that defendants breached a legal duty owed to plaintiffs. Consequently, Danna contends that its motion for summary judgment as to the Priscos' common law tort claim should be granted. A private nuisance " 'threatens one person or a relatively few ..., an essential feature being an interference with the use or enjoyment of land.... It is actionable by the individual person or persons whose rights have been disturbed.' " *Shore Realty Corp.,* 759 F.2d at 1050 (quoting *Copart Indus., Inc. v. Consolidated Edison Co.,* 41 N.Y.2d 564, 394 N.Y.S.2d 169, 172, 362 N.E.2d 968, 971 (1977)).

In addition,

> one is subject to liability for a private nuisance if his conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities.

*National R.R. Passenger Corp. v. New York City Hous. Auth.,* 819 F.Supp. 1271, 1278 (S.D.N.Y.1993) (Martin, J.) (quoting *Copart Indus.,* 394 N.Y.S.2d at 172, 362 N.E.2d at 971)). A public nuisance " 'is an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency" and "consists of conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all ... in a manner such as to ... endanger or injure the property, health, safety or comfort of a considerable number of persons.' " *Shore Realty Corp.,* 759 F.2d at 1050 (quoting *Co-*

*part Indus.*, 394 N.Y.S.2d at 172, 362 N.E.2d at 971)).

■■■■ For private and public nuisance actions, "[p]laintiff must plead that defendant breached a duty owed to plaintiff, proximately causing injury to plaintiff," *National R.R. Passenger Corp.*, 819 F.Supp. at 1279, and a defendant is subject to liability if it learned of the nuisance and had a reasonable opportunity to abate it. *Shore Realty Corp.*, 759 F.2d at 1050; *National R.R. Passenger Corp.*, 819 F.Supp. at 1279. Here, plaintiffs argue that defendant waste haulers purposefully deposited non-C & D material at the Prisco site and consequently knew of the potential damage which would ensue. Indeed, plaintiffs submitted evidence that implicates a Danna truck in the dumping of "objectionable material" at the Prisco site. (*See* Smith Dep., at 110.)

In order for Danna to prevail on its motion for summary judgment it must show that there is no genuine issue as to any material fact regarding plaintiffs' nuisance claim and that the moving party is entitled to a judgment as a matter of law. Certainly, defendants' knowledge of the nuisance is in question, making summary judgment inappropriate. Danna's motion for summary judgment as to plaintiffs' nuisance claims is therefore denied.

Defendants assert that if the court dismisses plaintiffs' federal claims, then the court should also dismiss the pendent state law claims for want of federal subject matter jurisdiction. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (where federal claims are dismissed or state claims predominate, state claims should be dismissed); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir.1986), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986). Given that the court has only dismissed the CWA claim and that there remain federal and state law claims stemming from the same set of operative facts, the court maintains jurisdiction over the state law claims which, therefore, will not be dismissed.

## Conclusion

Defendants' motions to dismiss the Priscos' CERCLA claim are denied. Defendants' motions and plaintiffs cross-motion for summary judgment on the CERCLA claim are denied. Plaintiffs' motion to strike impermissible affirmative defenses under CERCLA is granted. Plaintiffs' motion for declaratory relief for future response costs under CERCLA is granted.

Defendants' motions to dismiss plaintiffs' RCRA claim are denied. Defendants' motions and plaintiffs' cross-motion on the RCRA claim for summary judgement are denied. The Priscos' request for reimbursement costs under the RCRA is denied.

Defendants' motions to dismiss the CWA claim are granted, and accordingly, all parties' motions for summary judgment as to the CWA claim are denied.

The court denies Stamford's motion for summary judgment as to the Freshwater Wetlands Act, N.Y.Envtl.Conserv.Law § 24–0107 (McKinney 1984). The court denies Danna's motion for summary judgment as to plaintiffs' nuisance claims. The court denies defendants' motions to dismiss plaintiffs' state claims for lack of subject matter jurisdiction.

IT IS SO ORDERED.